## JOHN M. HENDERSON

*v.*

## GEORGE P. STOKES.

1. To reform a written instrument, which is the foundation of a bill for specific performance, on the ground of mistake, the proof must be so full and clear as to leave no room for controversy.

2. It must appear that both parties intended, at the time the instrument was drawn, to have the alleged omission inserted.

3. A party who pays his money upon a parol agreement to convey lands, and accepts a receipt therefor, which is the only writing between the parties, with the clear understanding that it does not contain a term or stipulation, which he thought was intended by the parol agreement, and which the other party expressly refused to insert, is not entitled to have such receipt reformed.

*Mr. C. G. Garrison,* for complainant.

*Mr. R. J. Clymer,* for defendant.

BIRD, V. C.

This bill is filed to reform a writing, which contains a promise to convey real estate, signed by the defendant, and to specifically perform such promise. The writing is in these words:

> "Received of Jno. M. Henderson, one hundred dollars, on account of purchase of dwelling and store property, occupied by Wm. S. Conner and Carr & Smith, on Main St., Woodbury, N. J. I to give him deed for the same August the first, 1886, conditional that he pay six thousand dollars for the property.
>
> "GEORGE P. STOKES."

This writing bears date, and was executed and delivered July 5th, 1886. The lots of land named adjoin each other, and are of equal depth. The complainant says that the agreement was that a portion of another lot, lying in the rear of the two named, should have been included in the writing. The lots named are

one hundred and seventeen feet deep, and the complainant says that the agreement was that they were both to be extended about twenty-five feet to the extension of the line of a lot then recently sold to a sister of the defendant.

The parties had had several interviews before the money was paid, and the receipt containing the promise to convey was given. Henderson says that, at one of these interviews, he asked if the lots so occupied by Conner and Carr & Smith would not be extended to the corner of the lots sold to Mrs. Stokes in case the bargain should be completed, and that the defendant agreed that they should; but this is denied by the defendant. After this alleged interview respecting the extension of the lots, the parties met, and had other interviews respecting the sale and purchase; and on July 3d, 1886, the defendant called on the complainant, and told him that he could have the lots for $6,000. Prior to that time the point of difference between them had been the consideration to be paid—on the one hand, it being urged that the consideration asked was first $7,000, and then $6,500, and, finally, $6,000, while, on the other, it is urged that $6,500 was the first price named. I mention this fact because, from the testimony on the part of the defendant, it would appear that the consideration for the lots occupied by Conner and by Carr & Smith was the only question that the parties did not agree upon, and that the quantity of land was in no wise taken into account, it being understood from the first that the two lots named, and only those two, without any addition, were in the minds of the parties, while the complainant insists that the subject-matter of their interviews comprehended the extension of said lots, although he admits that matter was not spoken of once.

It appears, from the complainant's statement, that the time when he inquired, in case he bought, whether such extension would be made or not, was sometime prior to the consummation of the negotiations on July the 3d. When the negotiations were concluded, it does not appear that there was any understanding that the terms of the agreement should be reduced to writing.

On July the 5th, the complainant called upon Edwin Stokes,

a nephew of the defendant, and with whom the complainant had had one or more conversations respecting the price of the lots, and asked him to accept of $100 as part payment of the consideration for the lots, and to give him a receipt therefor, intimating that he would prefer to deal with him. Edwin then drew the receipt above copied, and submitted it to the complainant, who read it, and understood it, and claimed that it should have included the extension referred to. Edwin told him no, that that was not included in the agreement, and that he couldn't have it. They parted, with the understanding that Edwin was to have the defendant sign the receipt; he procured such signature, and, about two hours afterwards, the complainant called on Edwin and took the receipt.

The parties and the witnesses are of the highest standing for integrity. The defendant emphatically denies any agreement or promise to sell any land beyond the bounds of lots occupied by Conner and by Carr & Smith. The complainant says that the additional land was to be included, and that on one occasion, after the receipt was signed and delivered, the defendant admitted that he had agreed to include it, by saying: "Well, I oughtn't to have sold you that, for it was leased to L. B. Brown & Co. as a lumber yard." The defendant denied this on his direct examination, but on cross-examination was made to admit it; and again, when re-examined, very pointedly denied it.

These statements show all that there is in the case up to the time of the delivery of the receipt. I cannot perceive that anything appears afterwards to strengthen the one side or the other.

Does enough appear to warrant the court to decree that the defendant shall convey the additional land? The court never interferes unless it is incontrovertibly proved that there was a mistake. The rule is thus inexorable to save the court from the danger of making contracts for parties. I submit a few of the cases in our own reports: *Graham* v. *Berryman*, 4 *C. E. Gr.* 29; *Paulison* v. *Van Iderstine*, 1 *Stew. Eq.* 306; *Rowley* v. *Flannelly*, 3 *Stew. Eq.* 612; *Ramsey* v. *Smith*, 5 *Stew. Eq.* 28; *Doniol* v. *Commercial Fire Insurance Co.*, 7 *Stew. Eq.* 30; *Cummins* v. *Bulgin*, 10 *Stew. Eq.* 476. These cases also show that it must

Henderson *v.* Stokes.

appear that the mistake must be *mutual;* that is, at the time of the execution of the writing some term was left out which both parties had consented to, and which both intended to have in the agreement. *2 Lead. Cas. Eq. 980, 981 ; Graves* v. *Boston Ins. Co., 2 Cranch 444; 1 Story's Eq.* §§ *152, 153, 154, 157, 160 ; 2 Pom. Eq.* § *862.*

. Taking it for granted that the complainant, at one time, did ask the defendant to include said extension, and that the defendant then promised to do so, to what conclusion does a fair consideration of the cases lead us, keeping in mind the facts that when the receipt was signed the defendant refused to include such extension, and that the complainant accepted the receipt with the fullest understanding of such refusal, and also the fact that there was no agreement between the parties that their agreement should be reduced to writing? In *2 Lead. Cas. Eq. 980,* the authorities are given for the principle that if two persons come to terms, and agree that the contract shall be reduced to writing, and one of them frame the instrument differently, without the knowledge of the other, who signs in ignorance of the change, the latter is entitled to have the variation rectified. And the case is substantially the same when one of the parties knows that the scrivener has misdrawn the deed and does not inform the other. The learned American editor of that work says the rule is accurately given in *Tesson* v. *Atlantic Ins. Co., 40 Mo. 33, 36 :* " A court of equity has jurisdiction to reform a policy of insurance or other written contract upon parol evidence, when the agreement really made by both parties has not been correctly incorporated into the instrument through accident or mistake in the framing of it, but both the agreement and the mistake must be made out by the clearest evidence, according to the understanding of both parties as to what the contract was intended to be, and upon testimony entirely exact and satisfactory, and it must appear that the mistake consisted in not drawing the instrument according to the agreement that was made." See the cases cited. On page 985 the same author says : " The criterion in every case is the intention of the parties at the time

Henderson v. Stokes.

of executing the instrument, and a deed drawn in accordance with what they then designed will not be reformed, because there is reason to suppose that they would have had a different intention, if the effect had been present to their minds, at the time of executing the deed." The mistake must be a mistake in reducing the mutual intention of both parties to writing. *Fry on Spec. Perf.* §§ *500, 501, 502, 503.*

I make no comment on the fact that the complainant entered not into any contract that bound him, having never signed any writing; but state the case as though he were bound, and it appears that after several interviews the defendant promised the complainant to convey to him certain lands for $6,000, and that two days after such promise the complainant, on his own motion (it having been no part of the agreement that he should), made a tender of $100 as part of the purchase-money, and demanded a receipt; and that such receipt was drawn, distinctly naming two parcels, but not the third (or the extension of the two), which omission the complainant saw, spoke of and insisted upon having it included, and was denied; hours after this denial he paid his $100 and accepted the receipt. Now, with the above rules before me, how can I conclude that there was a mistake? In a legal or equitable sense, can there be any mistake in an agreement or writing which is understood at the time of its execution to admit the point, the term or the article in dispute, and which, after debate (insistment on the one hand and denial or refusal on the other), is consented to and accepted by the complaining party? I think in such case the complainant is overcome by his own conduct. By paying his money and accepting that receipt he distinctly accepted the contract thereby tendered, and ratified it as therein expressed. After what transpired, it was impossible for him to ratify or to accept conditionally. The other party had rights, and it would be most unfair and inequitable for this court to compel him to convey lands which he positively refused to agree to convey at the time when the complainant sought to bind him, according to the statute of frauds.

Since it appears that the defendant prepared and tendered a deed for the two lots named in the receipt, before the bill was filed, I will advise a decree dismissing the complainant's bill, with costs.